**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD D. COY, | No. C 03-5082 SBA |
| Plaintiff, | **ORDER** |
| v. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | [Docket Nos. 17 & 18 ] |
| Defendant. | |

Plaintiff Ronald D. Coy ("Plaintiff") brings this action pursuant to the judicial review provision of the Social Security Act, 42 U.S.C. § 405(g), to obtain review of a decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for Social Security disability benefits. Now before the Court are Plaintiff's Motion for Summary Judgment or Remand and Defendant's Cross-Motion for Summary Judgment. Having read and considered the papers submitted by the parties, and having reviewed the record as a whole, the Court DENIES Plaintiff's Motion for Summary Judgment, GRANTS Plaintiff's Motion for Remand, and DENIES Defendant's Cross-Motion for Summary Judgment.

## **BACKGROUND**

**A.    Procedural History**

Plaintiff filed an application for Social Security disability benefits on October 12, 2001 and Supplemental Security Income ("SSI") on October 27, 2001, claiming a disability that began on November 14, 2000. (Tr. 65.) Plaintiff alleged a right femur fracture, deep vein thrombosis, resultant pain, and prior hearing loss prevent him from working. (Tr. 15, 203.) Plaintiff's application was

originally denied in November, 2001[2], then denied again on reconsideration on January 31, 2002. (Tr. 52-55, 58-61.)

Plaintiff requested his case to be heard by an Administrative Law Judge ("ALJ") on May 20, 2002, and the assigned ALJ conducted a hearing on October 10, 2002. (Tr. 63, 32-49.) On November 19, 2002, the ALJ found that the Plaintiff "retains the residual functional capacity to perform a wide range of sedentary work as supported by the opinions of treating orthopedist Dr. Bernstein and Dr. Calvin Pon, examining orthopedist . . . ." (Tr. 18.) Based on the Plaintiff's age, education, and work experience, Medical -Vocational Rules 201.27 through 201.29[3] supported a finding of "not disabled."

The Plaintiff filed a notice of appeal to the Appeals Council on January 16, 2003. (Tr. 10.) On September 4, 2003, the Appeals Council denied review, and noted that the denial meant that the decision of the ALJ was a final decision of the Commissioner of Social Security. (Tr. 5.) The plaintiff then filed for review in this Court on November 17, 2003. [Docket No. 1.]

On November 17, 2003, the Plaintiff also filed a Motion for Leave to Proceed *in forma pauperis* ("IFP"). [Docket No. 3.] This Court granted leave to proceed IFP by an order filed May 17, 2004. [Docket No. 8.] On March 2, 2005, Plaintiff filed his Motion for Summary Judgment or Remand. [Docket No. 17.] On March 31, 2005, Defendant filed its Opposition to Plaintiff's Motion and its Cross-Motion for Summary Judgment. [Docket No. 18.] On April 14, 2005, the Plaintiff filed his Reply Memorandum. [Docket No. 19.]

**B.    Summary of ALJ's Findings**

After consideration of the entire record, the Administrative Law Judge made the following findings regarding the Plaintiff's alleged disability:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits only through December 30, 2001.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of

---

[2] The exact date is not specified in the record. Since the decision was based on medical records received through November 13, 2001, and Plaintiff requested reconsideration on November 30, 2001, the decision must have been in the latter half of November.

[3] These rules apply to claimants who are limited to sedentary work, are age 18 to 44, and have at least a high school education.

2

disability, November 14, 2000.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b). The claimant is status post[4] a fracture of the right femur sustained in a motor vehicle accident and has a long-term hearing impairment correctable with hearings aids. No evidence to establish any recurrence of post-cancer surgery in 1994 has been submitted.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. Pursuant to Social Security Ruling 96.7p, claimant's allegations regarding his limitations are not totally credible, and the sparse evidence of record does not support a finding of a disabling condition for any continuous twelve month period before or after his date last insured.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity to perform at least a wide range of sedentary exertional work. He is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963), and has more than a high school education (20 CFR §§ 404.1564 and 416.964); and has the residual functional capacity to perform substantially a wide range of sedentary work (20 CFR §§ 404.1567 and 416.967).

8. Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, Medical-Vocational Rules 201.27 through 201.29, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

9. The claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

10. The claimant was not under a "disability," as defined by the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. 19, 20.) Accordingly, the ALJ concluded that Plaintiff was not disabled, and therefore ineligible for Social Security disability benefits and SSI.

**STANDARD OF REVIEW**

When a District Court reviews a denial of Social Security Disability Insurance benefits, the court must hold unlawful and set aside the denial if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court must uphold an ALJ's decision to deny benefits if the decision is free of legal error and supported by "substantial evidence." *Moore*

---

[4] This is medical terminology. If a person is "status post" a fracture, then the person had a fracture at some point in the past. The terminology "status post" appears to distinguish between a condition a person had at some point in the past from having the condition currently.

3

1  *v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). Substantial evidence is such relevant
2  evidence as a reasonable mind might accept as adequate to support a conclusion based on the record as
3  a whole. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Evidence can be substantial if it is more
4  than a scintilla, even though less than a preponderance. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
5  1999). The Commissioner's decision cannot be affirmed simply by isolating a specific quantum of
6  supporting evidence. *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998). Rather, the court must
7  consider the record as a whole, weighing both the evidence that supports and evidence that rebuts the
8  Commissioner's conclusion. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Where the
9  evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be
10 upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

11 When there are conflicting medical opinions, the ALJ must determine credibility and resolve the
12 conflict. *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004). To reject a treating
13 physicians's opinion in favor of an examining physician, an ALJ must make specific legitimate findings
14 based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751(9th Cir. 1989).
15 However, this rule does not apply "when the nontreating physician relies on independent clinical
16 findings that differ from the findings of the treating physician." *Id.*

### DISCUSSION

18 Plaintiff alleges in his Motion that the ALJ's decision contains "multiple legal errors such that
19 it is not sufficiently developed for summary judgment." (Motion, 16.) In his Motion, Plaintiff argues
20 that the ALJ erred: 1) by failing to fully and fairly develop the record; 2) by failing to consider Plaintiff's
21 pain symptoms; 3) by mechanically applying the Medical-Vocational guidelines; 4) by failing to
22 consider Plaintiffs non-exertional impairments, including loss of hearing and inability to climb, balance,
23 stoop, kneel, crouch, or crawl; and 5) by failing to give weight to the Medi-Cal decision (which found
24 the Plaintiff disabled). (Motion, 8-16.)

25 Defendant responds by asserting that 1) the ALJ fully and fairly developed the record and that
26 the claimant also bears responsibility to develop the record; 2) the ALJ made specific findings that were
27 inconsistent with Plaintiff's allegations of excessive pain; 3) the ALJ considered Plaintiff's non-
28 exertional limitations, including loss of hearing, pain, and ability to stoop, crouch, kneel, climb, balance,

4

1 and crawl; 4) the ALJ properly applied the Medical-Vocational guidelines because the non-exertional
2 limitations were not severe; and 5) the ALJ properly considered the Medi-Cal decision, but did not find
3 it persuasive because it relied on Plaintiff's hearing impairment, which is correctable. (Cross-Motion,
4 3-9).

5 The parties arguments focus on three questions: 1) whether the ALJ adequately developed the
6 record; 2) whether Plaintiff's non-exertional limitations should preclude the use of the
7 Medical-Vocational guidelines; and 3) whether the ALJ gave sufficient weight to the Medi-Cal decision.

**A.     Development of the Record**

9 Plaintiff and the Social Security Administration ("SSA") are jointly responsible for developing
10 the record. 20 C.F.R. §§ 404.1512(c), 404.1512(d), 416.912(c), 416.912(d). Based on Plaintiff's stated
11 injuries, the SSA obtained Plaintiff's relevant medical records, and obtained an opinion of a social
12 security disability specialist. (Tr. 151-248.)

13 Plaintiff correctly points out that in Social Security cases, "the ALJ has a special duty to fully
14 and fairly develop the record, and assure that the claimant's interests are considered." *Brown v. Heckler*,
15 713 F.2d 441, 443 (9th Cir. 1983). A review of the cases cited by Plaintiff explain the context of this
16 special duty. In *Higbee v. Sullivan*, 975 F.2d 558 (9th Cir. 1992), the claimant was not represented by
17 counsel at the time of the hearing, and was suffering from a mental illness. Under these circumstances,
18 the court emphasized the need for the ALJ to "scrupulously and conscientiously" explore all of the
19 relevant facts. *Id.* Plaintiff also cites to *Brown*, *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996),
20 and *Mendoza v. Apfel*, 88 F. Supp. 2d 1108, 1114 (C.D. Cal. 2000) in arguing for the ALJ's special duty.
21 (Reply Memorandum, p. 2.) In all three of these cases, reviewing courts reversed the ALJ's decision
22 because the ALJ failed to investigate facts or opinions known to be highly relevant.

23 Here, in contrast, the Plaintiff asserts that the ALJ should have opened up further inquiry into
24 Plaintiff's colonoscopy, even though colon problems were never asserted as part of his disability, and
25 Plaintiff provided no evidence to show that there were any adverse findings or that the colonoscopy was
26 relevant to his alleged disability. (Motion, p. 4; Reply Memorandum, p. 2.)

27 The absence of medical evidence for the year prior to the October 10, 2002 hearing, according
28 to Plaintiff, demonstrates a failure of the ALJ to develop the record. (Motion, p. 8.) However, the

5

claimant bears the responsibility to present "complete and detailed objective medical reports of [his] condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). It is also noteworthy that Plaintiff did not provide any additional evidence to demonstrate the relevance of his colonoscopy when he appealed to the Appeals Council, even after explicit prodding by the Appeals Council on July 1, 2003. (Tr. 8, 9.) As noted, development of the record is a shared responsibility, and the claimant bears the responsibility to present medical reports of his condition. *See* 20 C.F.R. § 404.1512; *Meanel*, 172 F.3d at 1113. Absent additional evidence from the Plaintiff, the ALJ fulfilled his duty by obtaining all records pertaining to Plaintiff's motorcycle accident injuries and obtaining the independent opinion of a social security disability specialist. In particular, where, as here, a claimant is represented by counsel, an ALJ can ordinarily rely on counsel to identify the issues requiring further development. *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).

**B.     Non-exertional Limitations and Application of the Medical-Vocational Guidelines**

When a claimant's non-exertional impairments are severe, they may limit functional capacity in ways not contemplated by the Medical-Vocational guidelines ("grids"). *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). In such a case, the guidelines would be inapplicable. *Id.* However, the fact that a claimant alleges non-exertional limitations "does not automatically preclude the application of the grids." *Id.* The ALJ must determine if the claimant's non-exertional limitations significantly limit the range of work permitted by the claimant's exertional limitations. *Id.* When the grids do not accurately and completely describe a claimant's impairments, then the ALJ must take testimony from a vocational expert. *Holohan*, 246 F.3d at 1208.

Plaintiff alleges non-exertional limitations based on pain and the side effects of pain medication, an inability to stoop, and hearing loss. (Tr. 15, 42, 111-13, 133, 242-43.) Based upon a review of the record, the Court concludes the ALJ made a legal error in dismissing Plaintiff's evidence of a hearing impairment.

*1.     Non-exertional Limitation Based on Pain and the Side Effects of Pain Medication*

Pain may be a non-exertional limitation. *Penny v. Sullivan*, 2 F.3d 953 (9th Cir. 1993). Plaintiff has had pain since his accident on November 14, 2000. (Tr. 111-13.) Plaintiff has controlled the pain by taking Tylenol and Vicodin. (Tr. 42, 111-13.) By March 9, 2001, Dr. Velasco noted in his report

that the patient "is doing well without any problem, using a cane, is able to move around with pain." (Tr. 195.) In September and October of 2001, less than 12 months after the motorcycle accident, Plaintiff indicated to his physical therapist that his pain was 0-2 on a 0 to 10 scale. (Tr. 207-08.) In addition, Plaintiff indicated that he could do some activities, like light shopping and carry groceries. (Tr. 41-43.) A claimant need not be completely incapacitated to receive Social Security benefits, but performance of ordinary household activities may suggest a pain level that would not preclude employment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The record thus has substantial evidence to support the ALJ's conclusion that Plaintiff's pain was not so severe that it interfered with exertional limitations.

Plaintiff also alleges that his pain medication makes him drowsy. (Tr. 111.) Plaintiff cites to *Stewart v. Chater*, 993 F. Supp. 809, 816 (D. Colo. 1988) for the proposition that a claimant need not provide evidence of drowsiness caused by taking Vicodin because this side-effect is well-known. (Reply Memorandum, p. 5.) *Stewart* is not persuasive here. The plaintiff in *Stewart* was taking Vicodin daily, making him groggy for an hour or two each time. *Id.* at 812. The plaintiff in *Stewart* also testified that by the end of the day he was in so much pain that it would typically be 2:30 or 3:00 AM before the Vicodin would "set in enough" so that he could sleep. *Id.* Plaintiff here, by contrast, does not even take Vicodin every day. (Tr. 42, 111.) In most cases Plaintiff can treat the pain with Tylenol. (Tr. 42.)

2.  *Non-exertional Limitation Based on an Inability to Stoop*[5]

Social Security Ruling No. 96-9p provides clear guidance on how the ability to stoop affects a person's job opportunities:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but the restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.

SSR 96-9p at *21.

Here, three doctors have opined on Plaintiff's ability to stoop, reaching three different

---

[5] To "stoop" means to "bend down and forward at the waist." To "crouch" means to "bend legs and back down and forward." *See* forms SSA-3368-BK (2-2004) and SSA-3369-BK (1-2005).

7

1 conclusions.  First, in an undated residual functional capacity ("RFC") assessment, Dr. Bernstein
2 concluded that Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl.  (Tr. 242-43.)  In
3 contrast, examining orthopedist Dr. Pon concluded that Plaintiff had no restriction on stooping, but
4 should limit crouching, kneeling, and crawling to occasionally. (Tr. 78.)  Dr. Pon provided an extensive
5 report of his evaluation on February 27, 2001.  (Tr. 77-79.)  On November 20, 2001, Dr. Chokatos
6 performed a residual capacity assessment of Plaintiff, and concluded that stooping should be limited to
7 occasionally.  (Tr. 236, 241.)  It is the responsibility of the ALJ to resolve conflicts in medical
8 testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  In particular, the ALJ "need not
9 accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of
10 clinical findings to support its conclusion.' " *Id.* at 751.

11 Based on SSR 96-9p, the ALJ need only determine whether Plaintiff could stoop occasionally.
12 *See* SSR 96-9p.  Since both Dr. Pon and Dr. Chokatos agree that Plaintiff could stoop *at least*
13 occasionally, there is no conflict between their opinions for purposes of determining Social Security
14 eligibility.  The RFC assessments of both Dr. Bernstein, one of Plaintiff's treating physicians, and Dr.
15 Chokatos are "brief and conclusory" because they were nothing more than boxes checked on the RFC
16 form.  (Tr. 236, 242.)  In contrast, Dr. Pon's report was substantial.  (Tr. 77-79.)  Though, the ALJ's
17 decision explicitly referred to the opinions of all three doctors, there was no explicit reasoning for
18 selecting among the opinions.  The ALJ's decision fails to include a determination as to Plaintiff's ability
19 to stoop, occasionally or otherwise, nor does it address the conflict of medical opinions of Drs.
20 Bernstein, Pon and Chokatos.  Therefore, the Court REMANDS the matter to the ALJ to resolve the
21 conflict in the medical opinions and make a finding as to Plaintiff's ability to stoop.

22 *3.     Nonexertional Limitation Based on Hearing Loss*

23 In 1999, prior to Plaintiff's motorcycle accident, he was already experiencing hearing loss.  (Tr.
24 133.)  Audiologist Kimberly Webb evaluated Plaintiff on September 23, 1999, and determined that
25 Plaintiff had a mild to moderate bilateral hearing loss.  (Tr. 133.)  She indicated that Plaintiff should be
26 using hearing aids and recommended that Plaintiff see an Ears, Nose & Throat specialist.  (Tr. 133).
27
28

1  On November 18, 1999, Dr. Boyle[6] examined Plaintiff. (Tr. 136-137.) Based on his examination, Dr.
2  Boyle concluded that Plaintiff had a bilateral hearing loss that was "below the lower limits of social
3  adequacy." (Tr. 137.) Dr. Boyle specifically indicated that Plaintiff was unable to hear and understand
4  normal conversational speech. (Tr. 138.) On November 6, 2001, audiologist Patricia Carly reconfirmed
5  Plaintiff's bilateral mild to moderately severe hearing loss. (Tr. 80.) The ALJ acknowledged all of these
6  reports, but noted that Plaintiff's hearing loss could be corrected by surgery or the use of hearing aids.
7  (Tr. 16-17.) In the ALJ's findings, he specifically stated that Plaintiff's "long-term hearing impairment
8  [was] correctable with hearing aids." (Tr. 19.)

9  Plaintiff correctly cites *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) for the proposition
10 that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that the
11 claimant cannot afford. Although Plaintiff's hearing loss is *correctable*, it was not *corrected* at the time
12 the ALJ made his decision. Defendant cites *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) to
13 support the contention that correctable impairments may be ignored. The plaintiff in *Odle* had a hearing
14 loss that was corrected by using hearing aids. *Id.* There, the plaintiff already had the hearing aids, and
15 they "returned hearing to within almost normal limits." *Id.* Thus, the only proposition of *Odle* relevant
16 to the circumstances of this case is that an ALJ may correctly dismiss impairments that are *corrected*.

17 Given Plaintiff's non-exertional impairment – his hearing loss – the Medical-Vocational
18 guidelines do not adequately describe his limitations. *See Desrosiers v. Sec'y of Health & Human*
19 *Servs.*, 846 F.2d 573, 577 (9th Cir. 1988) ("This court has recognized that significant non-exertional
20 impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids
21 inappropriate.") Because the grids do not accurately and completely describe Plaintiff's impairments,
22 the ALJ must take testimony from a vocational expert. See *Holohan*, 246 F.3d at 1208. Therefore, the
23 Court REMANDS the case to the ALJ to take testimony from a vocational expert, taking into
24 consideration Plaintiff's hearing loss.

25 **C.     Impact of the Medi-Cal Decision**

26 Medi-Cal defines disability in terms of federal Social Security law. Cal. Code Regs. tit. 22, §

---

[6] Dr. William Boyle is an Ear, Nose & Throat specialist.

9

50223(a)(1). However, Medi-Cal decisions are not binding on Social Security disability decisions. *See Disabled Rights Union v. Shalala*, 40 F.3d 1018, 1022 (9th Cir. 1994) (implicitly holding that a party could receive Medi-Cal even though Social Security disability benefits were denied.) Since the ALJ was not bound by the Medi-Cal decision, it was not a legal error for the ALJ to make his own assessment of the evidence.

## CONCLUSION

The ALJ made a legal error by failing to resolve the conflict in the record as to Plaintiff's ability to stoop and by dismissing Plaintiff's severe hearing loss as "correctable." However, the evidence in the record is insufficient for the Court to definitively determine that Plaintiff was disabled. Therefore, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Plaintiff's motion for remand. The Court directs the ALJ to resolve the conflict in the medical reports and take the testimony of a vocational expert to determine Plaintiff's job opportunities based on Plaintiff's exertional limitations and hearing loss. The Court DENIES Defendant's cross-motion for summary judgment.

The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: 2/28/06

SAUNDRA BROWN ARMSTRONG
United States District Judge